A duly qualified expert on the construction of elevators was called by the plaintiff, who testified that in his opinion the defendant's elevator did not have a substantial guard or gate and did not have a proper and safe protection. The learned trial justice, on motion of the defendant's counsel at the close of the plaintiff's case, dismissed the complaint on the ground that no negligence was established.

This was clearly erroneous. Violation of the duty imposed by section 95 of the Building Code was evidence of the defendant's negligence and establishes a prima facie case. McRickard v. Flint, 114 N. Y. 222, 21 N. E. 153; Racine v. Morris, 201 N. Y. 240, 94 N. E. 864. Furthermore, this action was brought within the provisions of the Employers' Liability Act (Labor Law, § 200 et seq.), and the plaintiff at least made prima facie proof that the injury was due to the negligence of the defendant in supplying an unsafe and improper "way" within the purview of that act.

It is claimed by the respondent that the evidence established contributory negligence on the part of the deceased. I am of the opinion, however, that no contributory negligence as a matter of law was established, and that that question should have been reserved for the jury to determine in view of all the circumstances.

The judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(159 App. Div. 337.)

NEW YORK LIFE INS. & TRUST CO. v. CONKLING et al.

(Supreme Court, Appellate Division, First Department. December 5, 1913.)

1. JUDGMENT (§ 681*)—TRUSTS (§ 187*)—RATIFICATION BY COURT—EQUITY JURISDICTION.

A wife devised her residuary estate in trust for the sole benefit of her children and grandchildren, without making any provision for her husband who survived her. He made claim to substantially the whole estate asserting that the title, while standing in the name of his wife, equitably belonged to him. Counsel for the children, believing that their right to the property was at least doubtful, agreed with the husband that the trustee under the will should hold an equal one-fourth part of the residuary estate in trust for him, pay the income thereof to him during his life, and on his death such portion should become a part of the residuary estate and be disposed of as directed in the will. The children thereupon sued the trustee and the living grandchildren praying ratification of the agreement, and judgment passed granting such relief. *Held*, that equity had jurisdiction to confirm such agreement, and, having done so, the judgment was conclusive on both the children and grandchildren, including those subsequently born whose interests were the same as those who were parties to the action by whom they were represented.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1202; Dec Dig. § 681;* Trusts, Cent. Dig. § 239; Dec. Dig. § 187.*]

2. TRUSTS (§ 206*)—TRUSTEES—POWERS.

A court of equity has power to authorize a testamentary trustee to mortgage or sell a part of the trust property to protect the balance from dissipation.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 283–292; Dec. Dig. § 206.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexe⁹

Appeal from Judgment on Report of Referee.

Suit by the New York Life Insurance & Trust Company, as executor, trustee, etc., under the will of Sarah B. Conkling, deceased, against Nathaniel W. Conkling, and Paulina Feodora Von Ohnesorge and others impleaded. Decree for complainant, and defendant Conkling appeals from so much of the judgment as declared a compromise and settlement previously entered into between the parties invalid. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Herbert Parsons, of New York City, for appellant.

Grenville T. Emmet, of New York City, for respondent New York Life Ins. & Trust Co.

Manton M. Wyvell, of New York City, guardian ad litem, for respondent Paulina Feodora Von Ohnesorge.

Frederick W. Stelle, guardian ad litem, for respondent Pauline Burleigh Conkling and another.

Charles K. Carpenter, of New York City, guardian ad litem, for respondent Natalie A. Caldwell and another.

Joseph Atz, for respondent Peck.

McLAUGHLIN, J. Sarah B. Conkling died on the 21st of February, 1904, leaving her surviving, as her only heirs at law and next of kin, her husband and three adult children. She left a will by which she gave her residuary estate, consisting of both real and personal property of the approximate value of $500,000, in trust to this plaintiff, with directions to divide the same into three equal parts and pay the income from one of the parts to each child during life, and upon the death of any child to pay over the principal set apart for such child to his or her issue, if any there were, and, if none, then to the surviving children or their issue. The will contained no provisions whatever in favor of the husband. It was admitted to probate and letters testamentary issued to this plaintiff, which was the sole executor and trustee named therein.

Shortly thereafter the husband, this appellant, made a claim in his own behalf to substantially the whole of the testatrix's estate, asserting that the title to the property, while standing in the name of his wife at the time of her death, equitably belonged to him. Counsel retained by the children, after a careful investigation, became satisfied that there might be a basis for the claim, since practically the whole of the real and personal estate of the testatrix had been in the possession of the husband and been by him conveyed and turned over to her. The situation thus presented gave the children no little concern, and well it might, as they were confronted with prospective litigation which might be long continued, expensive, and finally result in depriving them of the whole or a greater part of the residuary estate, which the appellant did not want to do. To avoid such result, he and his three children on the 28th of April, 1904 (he was then 68 years of age), entered into an agreement in writing whereby they agreed, subject to the approval of a court of competent jurisdiction, that the trustee under the

will should hold an equal one-fourth part of the residuary estate in trust and pay over the income therefrom to him during his life, and upon his death such one-fourth should become and be a part of the residuary estate of the testatrix and thus be disposed of as directed in her will. Immediately following the execution of the agreement, the three children commenced an action in the Supreme Court against the appellant, the trustee named in the will, and all the then living grandchildren. The judgment demanded was that the agreement be ratified and confirmed. In the answer interposed by the appellant he asserted that the estate equitably belonged to him; that it was received by the testatrix from, and she was to hold the same for, him; that he had claimed up to the time the agreement was executed, and still claimed, the same should be returned to him by her executor; that he had no wish to deprive his children and their issue of the estate if reasonable provision were made for him during his life; and for that reason he joined in the agreement and united with the plaintiffs in asking that judgment be rendered as prayed for in the complaint. The answers interposed by the infants submitted their rights to the protection of the court and asked it to grant such relief, if any, to the defendant as might be just and proper. The New York Life Insurance & Trust Company also answered, stating that it had no knowledge or information sufficient to form a belief as to the allegations of the appellant's claim, and therefore submitted its rights and interests to the protection of the court.

Upon these issues thus formed the case came on for trial, at the conclusion of which judgment was rendered as prayed for by the plaintiffs and this appellant; in other words, the judgment ratified and confirmed the agreement and directed the trustee to invest one-fourth of the residuary estate, pay the income derived therefrom to the appellant during his life, and upon his death the same should become and be held by the trustee as a part of the residuary estate of the testatrix. The judgment, which was entered on the 6th of July, 1904, also directed the appellant to execute a general release, which he did, to the children of the testatrix, her estate, the New York Life Insurance & Trust Company as executor and trustee, and the issue of children born and to be born.

In December, 1906, the plaintiff's accounts as executor were finally settled by a decree in the Surrogate's Court in a proceeding in which all of the then living grandchildren appeared, and the executor was directed to turn over the residuary estate to itself as trustee and hold the same subject to the terms of the will and of the judgment. The terms of the judgment were carried out and no question raised in regard to the appellant's right to receive, by virtue of it and the agreement, the income from one-fourth of the residuary estate until July, 1910, when one of the children of the testatrix died leaving issue. The issue of such deceased child thereupon became entitled to a share of the residuary estate, and the claim was then made on the part of the grandchildren that such share must be determined by the will itself, and that the agreement and judgment were invalid. Thereupon the trustee brought this action for an accounting and instructions. The

living grandchildren, two of whom were born since the judgment was entered in the former action, appeared by guardians ad litem and asked to have the agreement and judgment set aside.  The court sent the matter to a referee to hear and determine, and he reported in favor of the grandchildren's contention.  Judgment was thereupon entered declaring the agreement void, directing the trustee to disregard the provisions of the former judgment, also the surrogate's decree, and to dispose of the residuary estate in accordance with the terms of the will, and that a judgment for $2,000 be entered against the appellant in favor of the surviving issue of the testatrix's deceased child as being their portion of the income theretofore paid to the appellant.

[1] The conclusion reached by the referee, it seems to me, was based upon an erroneous conception as to the power of a court of equity to permit compromise to be made of claims against a trust estate.  That the court has such power cannot be doubted.  It has been exercised from the very earliest time and, so far as I have been able to discover, has never before been seriously questioned.  It necessarily exists by reason of the jurisdiction which such court exercises over trustees.  This was clearly pointed out by Lord Justice Turner in Brooks v. Lord Mostyn, 67 Eng. Chanc. Rep., 2 De G. J. & S. 373.  He said, referring to the power of the court in this respect:

"In the exercise of that jurisdiction the court may, in general, order the trustees to deal with the trust property in whatever mode it may consider to be for the benefit of the cestuis que trust who are infants or under disabilities; and to say that cestuis que trust can, except under very special circumstances, undo what the court has ordered to be done would be to cut away the root of the jurisdiction.  I have thought it right to make these observations because I consider it of great importance that no doubt should be cast upon this power of the court or upon the validity of acts done in the fair and bona fide exercise of it.  The rights of infants and incapacitated persons must, in many cases, be sacrificed if the power be not maintained, and acts which have been done under it cannot be disturbed without property, to a great amount, being affected by the disturbances.  These considerations are of themselves sufficient to show that it is not upon any light grounds that such a compromise * * * ought to be disturbed, but there is a further consideration which leads to the same conclusion.  Such compromises as these are made by the court in the exercise of its discretion, and it is not the habit of the court to disturb what has been done by the court in the exercise of discretion, except upon very strong grounds."

The court having this power, it follows that it had jurisdiction both of the persons and subject-matter in the action brought to approve the settlement.  The subject-matter was the agreement (that is, the proposed compromise), which was not to become effective unless approved by a court of competent jurisdiction.  It is true that two grandchildren of the testatrix, parties to this action, were born since the judgment of compromise was entered, but their interest in the trust estate is precisely similar to that of the other grandchildren, who were parties to the action.  These two infants are bound, therefore, to the same extent as the others.  Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. 1068; Downey v. Seib, 185 N. Y. 427, 78 N. E. 66, 8 L. R. A. (N. S.) 49, 113 Am. St. Rep. 926; Kent v. Church of St. Michael, 136 N. Y. 10, 32 N. E. 704, 18 L. R. A. 331, 32 Am. St. Rep. 693.

The compromise agreement had for its object not the destruction of the trust but its preservation. This distinguishes the case from Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745, upon which the referee mainly relied. There the compromise agreement which was held invalid was not entered into for the purpose of effectuating, as far as possible, the trust created but to entirely destroy it. Here, in confirming the agreement and directing the trustee to abide by it, the court decided, after hearing the evidence bearing upon the subject, that it was for the best interest of the estate that it should be carried out. Whether it were a proper agreement to make was an issue triable in the action, and if the court erred in its determination of the question, such error could be corrected by an appeal, otherwise the judgment entered became final and conclusive upon the parties and cannot, in the absence of fraud, be questioned by any of them. It is not claimed, or even suggested, but what all of the parties to the agreement acted in perfect good faith, or that the judgment was the result of any fraud practiced upon the court. It cannot well be, because all of the facts were laid before the court. Nothing was kept back or concealed.

The question as to the binding force of a judgment was considered in O'Donoghue v. Boies, 159 N. Y. 87, 53 N. E. 537. There it appeared that the court, in an action for partition, had directed the sale of real property devised to an infant, in contravention of the terms of a will and of the express provisions of the statute. 2 Rev. St. § 176, now section 2357 of the Code of Civil Procedure. There was a difference of opinion between the judges of the Court of Appeals as to whether the partition judgment were open to a subsequent attack by an infant on the ground that it was entered without jurisdiction, since the statute expressly forbade the sale. Chief Justice Parker, with whom two other members concurred, held that it did not, and that view has since been adopted in O'Donaghue v. Smith, 184 N. Y. 365, 77 N. E. 621. See, also, Tonnele v. Wetmore, supra.

To hold, as the referee did, that the court did not have jurisdiction to render the judgment is, under the facts presented, equivalent to holding that the court did not have power to permit a compromise to the end that a trust estate might, in part at least, be preserved. Look at the situation, a claim asserted which, if established, would require for its satisfaction substantially all of the property given in trust. Can it be seriously doubted, if the appellant's claim had been compromised by turning over to him one-fourth of the estate, and such compromise had been approved by a judgment of the Supreme Court, that all of the parties, including the infants, would have been conclusively bound by the judgment? Obviously not. In that case the trust estate would have been depleted to the extent of one-fourth. But the court never hesitates to exercise its equitable powers in directing a trustee to use a portion of the trust property, if it becomes necessary, in order to protect the balance.

[2] Thus it has been held that a testamentary trustee may be authorized to mortgage real property held by him for the purpose of paying off taxes thereon (United States Trust Co. v. Roche, 116 N. Y.

120, 22 N. E. 265); also to use a portion of the trust estate in repairing a building (Matter of Deckelmann, 84 Hun, 476, 32 N. Y. Supp. 404). Besides, the compromise agreement was the result of a family settlement, which especially commends itself to a court of equity (12 Am. & Eng. Enc. of Law, p. 875). It is at least doubtful whether the appellant, by reason of the releases and the lapse of time, could be restored to his former position, and it certainly would be very unjust to him, if he could not, to deprive him of the benefits obtained by the judgment.

The judgment, in so far as appealed from, therefore, is reversed, and the trustees directed to carry out the terms of the former judgment by paying to the appellant the income from the fund (one-fourth of the residuary estate of the testatrix) set apart for his benefit, with costs to the appellant, payable out of the trust estate. All concur.